UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>REAL PROPERTY: 770 NE 69TH STREET, UNIT 5A, MIAMI, FL 33138;<br><br>REAL PROPERTY: 770 NE 69TH STREET, UNIT 5I, MIAMI, FL 33138;<br><br>REAL PROPERTY: 496 FRONTENANC AVE., LOS ANGELES, CA 90065;<br><br>REAL PROPERTY: 7928 EAST DRIVE APT. 501, NORTH BAY VILLAGE, FL 33141; and<br><br>REAL PROPERTY: 2449 OLIVE AVENUE, LA CRESCENTA, CA 91214. | Case No. 24-mc-00083 |

**MOTION TO DISSOLVE RESTRAINING ORDER AND FOR EXPUNGEMENT AND REMOVAL OF LIS PENDENS**

Pursuant to 28 U.S.C. §2647(d)(3)(A) and 18 U.S.C. §983(j), Borivoje Vukadinovic, Svetlana Vukadinovic, Nenad Kokanovic, and the Nenad Kokanovic Irrevocable Trust (Movants) hereby move this Court to dissolve the Order, DE 2 (Restraining Order), and move for expungement and removal of the related lis pendens, because the Restraining Order is in violation of applicable law and violates due process of law as follows:

**STATEMENT OF FACTS**

**The Restraining Order and Lis Pendens**

On July 12, 2024, this Court entered the Restraining Order that, among other things, restrains the five properties identified in the caption (Properties) from being transferred or encumbered. The

1

Movants, each beneficial owners of the Properties,[1] were not provided notice nor opportunity to be heard prior to the entry of the Restraining Order. The terms of the Restraining Order were effective immediately and remain in full force and effect until various conditions subsequent occur, rendering the restraint against the Properties in perpetuity.

The government thereafter filed Notices of Lis Pendens against each of the Properties except Unit 5I (770 NE 69th Street, Unit 51, Miami, Fl 33138). Copies of the Lis Pendens are attached as Composite Exhibit 1.

### The Belgium Case

The Restraining Order was precipitated by the United States' Ex Parte Application (Application) to Enforce a Restraining Order (Belgium Restraining Order). A copy of a Belgium Restraining Order is attached as Exhibit 2.[2]  Significantly, the Belgium Restraining Order refers to Unit 5L and not Unit 5I.

Mr. Vukadinovic and Mr. Kokanovic were arrested in Belgium in May of 2024, were under house arrest in Belgium until recently released. However, despite assurances from the Netherland authorities otherwise, immediately upon their release by Belgium authorities, Netherland authorities took custody of Mr. Vukadinovic and Mr. Kokanovic and removed them to the Netherlands.

Despite an investigation into customs violations that began in 2020, and despite their detention since May of 2024, the case remains in the investigation stage.

---

[1] Borivoje Vukadinovic is the record owner of 770 NE 69th Street, Unit 5A, Miami, FL 33138 and 496 Frontenac Ave., Los Angeles, CA 90065;  Svetlana Vukadinovic is the record owner of 770 NE 69th Street, Unit 5I, Miami, FL 33138; Nenad Kokanovic is the record owner of 7928 East Drive Apt. 501, North Bay Village, FL 33141; and Nenad Kokanovic Irrevocable Trust is the record owner of  2449 Olive Avenue, La Crescenta, CA 91214.

[2] Despite request, the government has failed to provide a copy of the Application. Movants reserve all rights to raise additional arguments premised upon deficiencies in the Application, and other documents and information made available or produced in discovery.

### Ms. Vukadinovic and Unit 5I

Ms. Vukadinovic is the ex-wife of Mr. Vukadinovic. They are the co-parents of two young children plus Ms. Vukadinovic has a child from another relationship. Ms. Vukadinovic was not involved in the business subject of the investigation and has no knowledge of the activities of that business. Ms. Vukadinovic was never arrested nor charged and was not aware of the investigation until Mr. Vukadinovic's arrest in May of 2024.

Unit 5I was not purchased with monies related to the business subject of the investigation but was purchased with proceeds of the sale of real estate. Copies of the relevant title and bank records are attached as Composite Exhibit 3.

Unit 5I is Ms. Vukadinovic's homestead; she resides in Unit 5I with her three young children. She was awarded Unit 5I in her divorce pursuant to a Settlement Agreement entered June 19, 2023. Ms. Vukadinovic received Unit 5I in good faith settlement of the marital property having nothing to do with the Belgium criminal case. A copy of the letter by Ms. Vukadinovic's divorce attorney, Acacia Barros is attached as Exhibit 4. Ms. Vukadinovic was not aware of the governments' claim to Unit 5I until the government advised her real estate broker via email on the eve of the sale of Unit 5I in July of 2024, almost a year and a half after the Belgium Restraining Order was entered and after the property had been on the market for almost a year. A copy of the email by the government to the real estate broker is attached as Exhibit 5 and a copy of an excerpt of the Realtor.com listing is Exhibit 6.

Ms. Vukadinovic's economic circumstances require the sale of Unit 5I because her income is insufficient to pay the expenses, including, among other things, recent homeowner's association dues increases and special assessment, and needs the proceeds of the sale of Unit 5I to purchase a more affordable home and for living expenses for her and her children. A copy of a letter regarding the

homeowner's association fees and assessments is attached as Exhibit 7. Both the United States and Belgium authorities were advised prior to the cancellation of the contract to sell Unit 5I of the facts and circumstances giving rise to Ms. Vukadinovic's interest yet failed to take any action to avoid the hardship resulting from such cancellation of the contract or to otherwise respect her innocent ownership.

Ms. Vukadinovic sought the release of Unit 5I before the Belgium courts (Belgium Litigation).[3] In Belgium the lead investigator is also the judge, requiring Ms. Vukadinovic in the first instance to apply before that judge, Theo Byl. As the initiator of the request for the Restraining Order, Mr. Byl refused the request.  The Request for Lifting of an Investigative Act (Request for Lifting) and Mr. Byle's Rejection of Lifting of an Investigative Act (Rejection of Lifting) are attached as Composite Exhibit 8. The Rejection of Lifting did not cite to any evidence (no witness statements nor documents) supporting the underlying offenses or connection to criminality regarding 5I (or any of the other Properties), merely referring to the continuing "investigation."

Ms. Vukadinovic appealed the Rejection of Lifting, which appeal was denied by the appellate court, is similarly lacking reliance upon any articulated evidence (no witness statements nor documents), merely referring to the "studying of the criminal file" and the continuing "investigation." A copy of the Appeal/Conclusions and the Appellate Decision are attached as Composite Exhibit 9.

## THE REMAINING PROPERTIES

The property located at Olive Avenue (2449 Olive Avenue, La Crescenta, CA 91214), having been owned by Mr. Kokanovic since 1998 (deeded in 2022 to the Nenad Kokanovic Irrevocable Trust), was not purchased with the proceeds of any alleged criminality.  An excerpt from Public Records of Los Angeles County is attached as Composite Exhibit 10.

---

[3] Despite Movants entitlement to relief before this Court as described herein, the parties did not earlier move for such relief out of respect for Ms. Vukadinovic's circumstances and the Belgium Litigation.

Unit 5A (770 Ne 69th Street, Unit 5A, Miami, Fl 33138) and Apartment 501 (7928 East Drive Apt. 501, North Bay Village, FL 33141) are the homestead properties of Mr. Vukadinovic and Mr. Kokanovic, respectively.

## STATEMENT OF POINTS AND AUTHORITIES

The purported authority upon which the Restraining Order was entered was 28 U.S.C §2647(d)(3)(A)[4] and 18 U.S.C. §983(j)(1)(A).

28 U.S.C.S. §2467(d)(3)(A) authorizes restraining orders and provides:

> (i) In general. To preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for, and the court may issue, a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.
> (ii) Procedures.
>     (I) In general. A restraining order under this subparagraph shall be issued in a manner consistent with subparagraphs (A), (C), and (E) of paragraph (1) and the procedural due process protections for a restraining order under section 983(j) of title 18.

Subparagraphs (A), (C), and (E) of paragraph (1) provide that the district court shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation unless the court finds that:

> **(A)** the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law;
> **(C)** the foreign court lacked jurisdiction over the subject matter;
> **(E)** the judgment was obtained by fraud.

The procedural due process protections for a restraining order under §983(j) provide:

> (j) Restraining orders; protective orders.
>     (1) Upon application of the United States, the court may enter a restraining order . . . or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture—
>         (A) upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture; or

---

[4] The body of the order incorrectly refers to 28 U.S.C §2463(d)(3)(A).

(B) prior to the filing of such a complaint, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

(2) An order entered pursuant to paragraph (1)(B) shall be effective for not more than 90 days, unless extended by the court for good cause shown, or unless a complaint described in paragraph (1)(A) has been filed.

(3) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when a complaint has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought is subject to civil forfeiture and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than 14 days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

Although the Restraining Order refers to §983(j)(1)(A), no civil forfeiture complaint was filed pursuant to that subsection such that the only provision applicable to entitlement to the Restraining Order was §983(j)(1)(B). Furthermore, because the time periods allowed by §983(j)(3) have passed, the District of Columbia Court of Appeals has noted "the procedural protections that a civil forfeiture complaint provides in the United States" are required. *Luan v. United States*, 722 F.3d 388, 396-397 (D.C. Cir. 2013). One of these procedural protections is that the foreign order must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* at 397 (quoting Fed. R. Civ. P. Supp. Rule (G)(2)(f)).

The Supplemental Rules Regarding Asset Forfeitures applicable to in rem actions in general and forfeiture complaints, specifically, require under Rule G(2), among other things, a complaint be verified and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Rule G(3)(a) also compels the government to proceed under 18 U.S.C. §985 if the defendant is real estate.  Section 985(d) requires, among other things:

(1) Real property may be seized prior to the entry of an order of forfeiture if—
    (A) the Government notifies the court that it intends to seize the property before trial; and
    (B) the court—
        (i) issues a notice of application for warrant, causes the notice to be served on the property owner and posted on the property, and conducts a hearing in which the property owner has a meaningful opportunity to be heard; or
        (ii) makes an ex parte determination that there is probable cause for the forfeiture and that there are exigent circumstances that permit the Government to seize the property without prior notice and an opportunity for the property owner to be heard.

Rule 65 of the Federal Rules of Civil Procedure is also applicable and requires, among other things:

    (b) Temporary Restraining Order.
        (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
            (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
            (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
        (2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry— not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party

consents to a longer extension. The reasons for an extension must be entered in the record.

The Restraining Order fails to comply with the foregoing requirements of law because, among other things: a civil forfeiture complaint has not been filed in accordance with Fed. R. Civ. P. Supp. Rule G and §985; notice was not provided to the Movants; the Court did not (1) make a finding that there is a substantial probability that the United States will prevail on the issue of forfeiture, (2) make a finding that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture, (3) make a finding that the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered, (4) describe the injury and state why it is irreparable; state why the order was issued without notice, nor (5) has the United States demonstrated that there was probable cause to believe that the property with respect to which the order is sought is subject to civil forfeiture and that provision of notice would have jeopardized the availability of the property for forfeiture.

Furthermore, the Restraining Order was not limited to 90 days from its effective date, and as temporary restraining order, expired 14 days therefrom, or July 24, 2024.

The Court's finding that the Belgium Restraining Order has been rendered under a system of law compatible with the requirements of due process is not well-founded because, among other things and upon information and belief, Belgium law does not provide the procedures under 18 U.S.C. §983, 21 U.S.C. §853, 28 U.S.C. §2467 and Fed. R. Crim. Proc. 32.2, Fed. R. Civ. P. Supp. Rule G, nor Fed. R. Civ. P. 65, including the procedures applicable to third parties and innocent owners contained in §983(d) and §853(n). The Restraining Order similarly fails to provide for the protections required under the foregoing statutes.

That Belgium law is incompatible with the procedures and due process required in the United States is established by the Belgium Litigation wherein the Belgium courts' failed to rely upon articulated evidence in rejecting Ms. Vukadinovic's request to release Unit 5I despite Ms. Vukadinovic's evidence of innocent ownership and despite that the investigation has been pending since 2020. Ms. Vukadinovic satisfies the criteria of an innocent owner under §983(d), which section provides as follows:

> (A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.
> (B) An otherwise valid claim under subparagraph (A) shall not be denied on the ground that the claimant gave nothing of value in exchange for the property if—
> (i) the property is the primary residence of the claimant;
> (ii) depriving the claimant of the property would deprive the claimant of the means to maintain reasonable shelter in the community for the claimant and all dependents residing with the claimant;
> (iii) the property is not, and is not traceable to, the proceeds of any criminal offense; and
> (iv) the claimant acquired his or her interest in the property through marriage, divorce, or legal separation, or the claimant was the spouse or legal dependent of a person whose death resulted in the transfer of the property to the claimant through inheritance or probate, except that the court shall limit the value of any real property interest for which innocent ownership is recognized under this subparagraph to the value necessary to maintain reasonable shelter in the community for such claimant and all dependents residing with the claimant.

The restraint upon the Properties is in violation of due process and applicable statute and rule.

## REQUEST FOR ORAL HEARING

Pursuant to LCvR7(f), Movants request an oral hearing on this matter.

**CONCLUSION**

For the reasons explained above, the Court should dissolve the Restraining Order and expunge and remove the Lis Pendens, the latter according to the requirements of Florida and California law.

DATED this 17th day of February, 2025.

Respectfully submitted,

*s/ Ronald Gainor*                                    *s/ Amber Donner*
RONALD GAINOR, ESQ.                      AMBER DONNER, ESQ.
Florida Bar No. 606960                          Florida Bar No. 600032
GAINOR & DONNER                             GAINOR & DONNER
3250 Mary Street, Suite 405                    3250 Mary Street, Suite 405
Miami, Florida 33133                             Miami, Florida 33133
O: 305-537-2000                                    O: 305-537-2000
C: 305-206-2008                                    C: 303-359-314
F: 305-537-2001                                    F: 305-537-2001
Email: gainorlaw@gmail.com             Email: amber_donner@hotmail.com


**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of February 2025. I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.


*s/ Amber Donner*